UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ELIJAH STROMAN,

              Petitioner,

    v.

ELDON VAIL,

              Respondent.

Case No. C09-5458FDB

REPORT AND RECOMMENDATION

**Noted February 12, 2010**

This habeas corpus action, filed pursuant to 28 U. S.C. 2254, has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636 (b)(1)(B) and Local Magistrate Judge's Rules MJR 3 and MJR 4. Petitioner seeks relief from a 2001 Pierce County conviction by jury trial. He was convicted of first degree felony murder. The court has reviewed the file, including the petition, trial transcript, response and traverse, and finds no grounds to grant a writ of habeas corpus. Accordingly, this court recommends that the petition be denied.

# FACTS

The Washington State Court of Appeals summarized the facts relating to Mr. Stroman's conviction as follows:

> On October 16, 2001, Stroman, Jeanette Murray, and Todd Dow drove to the Travel Inn motel in Tacoma. Dow gave Stroman use of his car in exchange for drugs and a place to sleep. During the ride, Dow saw Stroman display a brick-colored gun that he believed had .22 caliber bullets.
>
> When they arrived at the motel, Murray enlisted someone named "Papa" to sign the motel registration card and to show identification for the room. 13 Report of Proceedings (RP) at 578. Murray also signed the registration card under a false name. Murray, Stroman, and Dow then went to room 30, where Calvin Rouse joined them. Dow saw Murray hold the gun and then hand it back to Stroman.
>
> The four stayed at the motel until October 18th. On that night, Gary Wilson and Cassidy Moen were engaging in sexual acts and smoking crack cocaine in room 24 of the motel. Wilson and Moen eventually ran out of cocaine. Moen saw Murray outside their motel room and knew that Murray would sell her more drugs.
>
> Murray sold them crack on more than one occasion that night and, at one point, she noticed that Wilson had a large amount of cash in the motel room. Murray advised Wilson to put the money away because of people who "can and will take your money if they have a chance." 16 RP at 901.
>
> After she saw Wilson's money, Murray returned to room 30 and told Stroman, Rouse, and Dow that Wilson had a large amount of cash. Stroman, Rouse, and Murray decided that they wanted to "hit a lick." 21 RP at 1831. Dow testified that this slang phrase meant "[t]aking something from somewhere or somebody." 21 RP at 1831.
>
> This group then "unexpected[ly]" began planning to leave room 30 and discussed which of their belongings they should take down to the car. 21 RP at 1833. They instructed Dow on what to take down and, after he made several trips, they told him to wait in the car. From the car, Dow saw Stroman, Murray, and Rouse leave room 30 and walk toward room 24.
>
> Someone knocked at Wilson's motel room door, and Wilson answered it. Murray and the two men entered the room. One of the men had a bandana covering most of his face and carried a gun. Murray grabbed for Wilson's jeans, which were on the floor, while the two men began to beat Wilson.

REPORT AND
RECOMMENDATION - 2

Moen backed toward the bathroom and heard Wilson say, "Stop. Don't shoot." 16 RP at 910. Moen then heard several gunshots but could not see who fired the gun. When Moen emerged from the bathroom, Wilson was on the floor, and the three assailants were gone. Moen went to the door and saw a tall black male jump into a car and pull out quickly.

While Dow was waiting in the car, he heard shots. Then he saw Murray, Stroman, and Rouse run for the car and saw Stroman lose a shoe. When they reached the car, Stroman got behind the wheel, Murray hopped in with money in her hands, and Rouse was bleeding from an injury.

Stroman drove to the East Wind Motel in Federal Way, stating that Tacoma was a "hot area" and that they should "go somewhere else." 21 RP 1856. Police responded to the Travel Inn and found Wilson dead. He had suffered three gunshot wounds and multiple injuries to his upper torso as a result of blunt trauma. The police recovered four bullet casings that were .45 caliber.

Police found documents with Rouse's name on them in room 24, a white tennis shoe on the staircase, and a $100 bill in the parking lot. A search of room 30 revealed a Cheetos bag with Stroman's fingerprint and a beer can with Murray's fingerprint.

The police arrested Murray and Stroman at the East Wind Motel on October 26th. On October 29, 2001, the State charged Stroman with first degree felony murder with a firearm enhancement.

The trial court denied Stroman's motion to suppress evidence the police found in room 30 and his motion to suppress Moen's identification of Stroman as one of the assailants.

During trial, Stroman moved for a mistrial because the State elicited testimony indicating that Stroman's fingerprints were on file with police before the current crime. The court denied the motion.

Stroman moved to preclude Dow from testifying that he saw Stroman with a gun shortly before the shooting. Following Stroman's offer of proof, the court denied the motion. The court also denied Stroman's motion to exclude Dow's testimony regarding plans to "hit a lick" and leave town. 21 RP at 1831.

The jury found Stroman guilty as charged….

(Dkt. # 11, Exhibit 2, pages 1 to 4).

REPORT AND
RECOMMENDATION - 3

## PROCEDURAL HISTORY

Petitioner filed a direct appeal, which was denied be the Washington Court of Appeals (Dkt. # 11, Exhibits 2 through 8). In a Motion for Discretionary Review to the Washington State Supreme Court he raised the following grounds for review:

1. It is not a violation of a person's Fourth Amendment rights when police seized personal property, such as a coat or luggage, that person had clearly "abandoned." No Washington court has ever, until now, applied this principle to uphold the denial of a motion to suppress evidence seized in a motel room before the tenancy in the room had expired. Should this Court grant review to address the significant constitutional question of whether the doctrine of "abandonment," developed in light of the limited protections given to personal property in public places, should apply in Washington to the far more protected area of a motel room?
Further, should this Court reverse even if the "abandonment" doctrine applies, where there was no evidence the officers knew the occupants had "abandoned" the room at the time of the search?

2. Is the DNA sentencing condition RCW 43.43.754 a violation of the Fourth Amendment prohibition against unreasonable searches and seizures? Should this Court grant review where it has already done so on exactly the same issue in State v. Surge, 122 Wn. App. 448, 94 P.3d 345 (2004), review granted, ___ Wn.2d ___ (No. 76013-6, October 21, 2004)?

3. Did the prosecutor commit misconduct which deprived Stroman of his due process rights to a fair trial by 1) telling the jury the witness suffered "absolute humiliation" by having to suffer through cross-examination, 2) bolstering the credibility of that witness, 3) telling the jury it had to find the police were "outright corrupt" and framing Stroman in order to acquit, and 4) saying that the investigation resulted in "truth" because it resulted in Stroman's arrest?

4. Was Stroman deprived of his state and federal rights to effective assistance of counsel where counsel failed to argue at the suppression hearing about the fact that Stroman had a completely different eye color than the assailant a witness had described to police, when the identification occurred in a suggestive procedure?

5. Did the trial court err in admitting highly prejudicial evidence that Stroman possessed a different gun than the one used in the incident in the days before the murder, and in admitting statements made before and after a conspiracy as "co-conspirator" statements? Further, did the court err in

|   |   |
|---|---|
| 1 | failing to grant a motion for mistrial when evidence about Stroman's criminal past was erroneously admitted? |
| 2 |   |

(Dkt. # 11, Exhibit 9, pages 1 to 3). Review was denied without comment on July 1, 2007 (Dkt. # 11, Exhibit 12).

Petitioner then filed a timely Personal Restraint Petition in the Washington Court of Appeals. The Personal Restraint Petition was denied and a Motion for Discretionary Review was filed (Dkt. # 11, Exhibits 12 to 15). In the Motion for Discretionary Review petitioner raised the following grounds for review:

> Was Stroman's state and federal constitutional right to a public trial violated when the trial judge excluded Stroman's mother from the courtroom without explanation and over Stroman's objection?

(Dkt. # 11, Exhibit 15, page 1). Review was denied July 8, 2009 (Dkt. # 11, Exhibit 16). The Federal Habeas Corpus action now before the court was timely filed and petitioner presents the following grounds for review:

1. My attorney was ineffective. Mr. Schwartz failed to call Jeanette Muncey at trial. She would have testified that I was not involved in the murder. Trial counsel failed to competently argue the motion to suppress the witnesses' identification of the perpetrator.

2. The prosecutor violated my right to a fair trial. The prosecutor told the jury it was hard for the witness Moen to testify. The prosecutor bolstered the credibility of witnesses Moen and the prosecutor argued that in order to acquit me, the jury had to conluce [sic] the police lied.

3. The out-of-court identification procedure was suggestive. The police told the witnesses my street name before the photo identification.

4. The trial court violated my right to a public trial. The State moved to exclude my mother from the courtroom even though she was not a witness. This was a ruse to exclude my family from the courtroom.

(Dkt. # 1. Page 5 and 6).

Respondent concedes that grounds two, three and four, and the second part of ground one are properly exhausted (Dkt. # 10, page 6). Respondent contends that the first half of ground one, regarding failure to call Jeanette Muncey to the stand is not properly exhausted because it was never presented to the Washington State Supreme Court (Dkt. # 10, page 6). Respondent contends this half of the first ground for review is now procedurally barred (Dkt. # 10, page 6).

## EVIDENTIARY HEARING NOT REQUIRED

Evidentiary hearings are not usually necessary in a habeas case. According to 28 U.S.C. §2254(e)(2) (1996), a hearing will only occur if a habeas applicant has failed to develop the factual basis for a claim in state court, and the applicant shows that: (A) the claim relies on (1) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable, or if there is (2) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense. 28 U.S.C. §2254(e)(2) (1996).

Petitioner's claims rely on established rules of constitutional law. Further, there are no factual issues that could not have been previously discovered by due diligence. Finally, the facts underlying petitioner's claims are insufficient to establish that no rational fact finder would have found him guilty of the crime. Therefore, this court concludes that an evidentiary hearing is not necessary to decide this case.

## STANDARD OF REVIEW

Federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension. Engle v. Isaac, 456 U.S. 107 (1983). Section 2254 explicitly states

that a federal court may entertain an application for writ of habeas corpus "only on the ground that [the petitioner] is in custody in violation of the constitution or law or treaties of the United States." 28 U.S.C. § 2254(a)(1995). The Supreme Court has stated many times that federal habeas corpus relief does not lie for mere errors of state law. Estelle v. McGuire, 502 U.S. 62 (1991); Lewis v. Jeffers, 497 U.S. 764 (1990); Pulley v. Harris, 465 U.S. 37, 41 (1984);

A habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. §2254(d). Further, a determination of a factual issue by a state court shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

## DISCUSSION

A. *Exhaustion*.

Respondent contends that the first half of ground one, regarding the failure to call Jeannette Muncey as a witness, is unexhausted. Review of the grounds for relief that are raised in the two Motions for Discretionary Review shows Respondent's position to be correct (Dkt. # 11, Exhibits 9 and 15).

Exhaustion of state court remedies is a prerequisite to the granting of a petition for writ of habeas corpus. 28 U.S.C. § 2254(b)(1)(A), (c). The exhaustion requirement is "grounded in principles of comity and reflects a desire to 'protect the state courts' role in the enforcement of federal law.'" Castille v. Peoples, 489 U.S. 346, 349 (1989) (*quoting* Rose v. Lundy, 455 U.S.

REPORT AND
RECOMMENDATION - 7

509, 518 (1982). Pursuant to § 2254(c), exhaustion typically requires that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). A petitioner can demonstrate that he has exhausted his state court remedy by providing evidence to the federal court that the issue was presented to the highest state court with a full and fair opportunity to consider all claims. Picard v. Connor, 404 U.S. 270, 276 (1971); Middleton v. Cupp, 768 F.2d 1083, 1086 (9th Cir.), *cert. denied*, 478 U.S. 1021 (1986).

B.  *Procedural Bar and Procedural Default*.

If it is clear that the petitioner's grounds for relief can no longer be presented to the highest state court because they are procedurally barred, the exhaustion requirement is satisfied, but the grounds for relief are procedurally defaulted. Coleman v. Thompson, 501 U.S. 722, 735 n. 1 (1991).

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Id. at 750.

Washington law prohibits the filing of second or successive collateral challenges, i.e., state personal restraint petitions. RCW 10.73.140 states:

> If a person has previously filed a petition for personal restraint, the court of appeals will not consider the petition unless the person certifies that he or she has not filed a previous petition on similar grounds, and shows good cause why the petitioner did not raise the new grounds in the previous petition.

Here, petitioner has previously filed at least one personal restraint petition with the State Court of Appeals challenging the conviction (Dkt. # 11, Exhibit 12). It was denied. (Dkt. # 11, Exhibit 14).

REPORT AND
RECOMMENDATION - 8

Petitioner's unexhausted federal habeas ground for relief (claim one first half) is procedurally barred under Washington law, and this ground is not cognizable in a federal habeas corpus petition absent a showing of cause and prejudice or actual innocence.

To satisfy the "cause" prong of the "cause and prejudice" standard, petitioner must show that some objective factor external to the defense prevented him from complying with the state's procedural rule. Murray v. Carrier, 477 U.S. 478, 488 (1986)). "Prejudice" exists if the alleged errors were of constitutional dimensions and worked to the defendant's "actual and substantial disadvantage." United States v. Frady, 456 U.S. 152, 170 (1982). Alternatively, in an "extraordinary case" the habeas court may grant the writ without a showing of cause and prejudice to correct a "fundamental miscarriage of justice" if petitioner can show that his conviction is the result of a constitutional violation and that he is actually innocent. Murray, 477 U.S. at 495-96.

Petitioner has failed to show the required cause and prejudice at the state level. Furthermore, petitioner has not demonstrated that this is an "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent," which would allow the court to review his unexhausted federal habeas claim. Murray v. Carrier, 477 U.S. at 496.

In conclusion, petitioner's first half of his first ground for relief, regarding the failure to call Jeannette Muncey as a witness, is procedurally barred under an independent and adequate state law. Because petitioner cannot show cause and prejudice or actual innocence to excuse his procedural default, this unexhausted ground is not cognizable in federal court.

C. *Ineffective Assistance of Counsel*.

The test to be applied in determining whether petitioner received ineffective assistance of counsel is twofold: petitioner must demonstrate both that counsel's performance was,

REPORT AND
RECOMMENDATION - 9

considering all the circumstances, unreasonable under prevailing professional norms and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 668, 687-91 (1984). Both parts need to be established; failure to make the required showing of either deficient performance or sufficient prejudice defeats the claim. Strickland, 466 U.S. at 700. Considering the first prong, petitioner must rebut "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and that counsel's performance was "sound trial strategy." Id. at 689. The Court must attempt to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. To meet the second Strickland requirement of prejudice, "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. Petitioner alleges that counsel was ineffective in failing to suppress Moen's photo montage identification of the defendant because counsel failed to stress that the witness had mis-identified the defendant's eye color. Respondent correctly notes:

> [T]o show that counsel was deficient and that the deficiency prejudiced the defense, Stroman must show the identification testimony was improperly admitted. To do this, Stroman must show "that the confrontation conducted . . . was so unnecessarily suggestive and conductive to irreparable mistaken identification that he was denied due process of law." Neil v. Biggers, 409 U.S. 188, 196 (1972) (quoting Stovall v. Denno, 388 U.S. 293, 301-02 (1967)). Whether the identification was unduly suggestive, however, "must be determined …on the totality of the circumstances.'" Neil, 409 U.S. at 196. "Absent a showing that the identification was unreliable, the evidence is properly admitted even though the confrontation was impermissibly suggestive. Id. at 199; Manson v. Brathwaite, 432 U.S. 98, 114-17 (1977).

(Dkt. # 10, page 16).

The Washington Court of Appeals considered this ground for relief and stated:

Stroman first asserts that his counsel ineffectively argued a motion to suppress based on Moen's identification of Stroman. Stroman notes specifically that counsel failed to highlight the discrepancy between Moen's statement that the perpetrator's eyes were "hazel" and the fact that Stroman's eyes are brown. 17 RP at 1062.

During the suppression hearing, the arguments focused on the detectives' investigative techniques that led to Moen's identification of Stroman as the man she saw at the Travel Inn on October 18. The court ruled that the identification procedures used by the detectives were suggestive because the detectives used Stroman's street name "Chill" before showing Moen a photomontage. 9 RP at 319.

The State then made an offer of proof, and Moen testified that the detectives "never pointed out the picture and the name and put it together. I pointed out the picture, and then they told me the name." 9 RP at 352. The court then ruled that the photomontage procedure was permissible and not "irreparably suggestive." 9 RP at 445.

Moen's statement that Stroman's eyes were hazel when they were actually brown would have had little, if any, impact on the court's ruling on the propriety of the detectives" interviewing and identification techniques. And Stroman's attorney did pursue the issue of eye color before the jury by asking Moen to "look at him. Be honest. Look at his eyes. He doesn't have hazel eyes?" 17 RP at 1062. To which Moen responded, "They're brown." 17 RP at 1062. Counsel's performance was neither deficient nor prejudicial.

(Dkt. # 11, Exhibit 2, pages 17 and 18). The Washington Court of Appeals decision is not contrary to clearly established law and is not an unreasonable interpretation of the facts. The court identified and applied the two-prong standard used to determine if counsel's performance was deficient and held that the claim failed under the second prong. The decision that the montage was admissible and did not result in a chance of misidentification is bolstered by other evidence the Washington Court of Appeals did not mention that the trial court considered and did discuss. The trial court noted that the witness did not just see Mr. Stroman on one occasion, at the scene of the crime, but also saw him two days later on the street and recognized him as the person who entered the motel room with a bandana over his face and a gun in his hand. RP 9 at 313.

Petitioner fails to show that the trial court impermissibly entered the identification made by Cassidy Moen. Thus, the plaintiff has failed to prove that he was prejudiced by the alleged failure to suppress the evidence, which is the second prong of the test regarding ineffective assistance of counsel.

D. *Prosecutorial misconduct*.

In considering a claim of prosecutorial misconduct, the relevant question is whether the prosecutor's allegedly improper arguments or comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). Petitioner alleges that the prosecutor told the jury it was hard for the witness Moen to testify; that the prosecutor bolstered the credibility of Moen and that the prosecutor argued that in order to acquit the petitioner, the jury would need to find that the police had lied

During closing argument, the prosecutor did state that defendant Moen had to testify regarding personal and intimate details of her meeting with the victim, (prostitution for drugs and money) and that cross examination was longer than direct. When defense counsel objected, the objection was sustained and counsel moved on. Contrary to the argument raised by petitioner, the state did not vouch for the credibility of any witness.

In closing argument, the prosecutor made the statement that for the defense theory to be correct the police would have to tell " not one, not two, but half a dozen civilian witnesses what to say to make all the pieces fit together." (Dkt. # 11, Exhibit RP 23 page 2201). This statement was in direct response to defense counsel's argument during closing. (Dkt. # 11, Exhibit 32 RP page 2139 to 2182)(Defense counsel argued that the witnesses had impaired memories and all had something to lose if they did not testify in the manner that fit the state's theory of the case).

REPORT AND
RECOMMENDATION - 12

Counsel went so far as to state that "[t]he state wants you to believe Cassidy Moen. They want you to believe her in such a bad way, they're even willing to blur their own moral standards to do so." (Dkt. # 11, Exhibit RP 32, page 2164). Trials can be long and adversarial. Sometimes counsel may not make the best or most appropriate comments. That is why trial procedures include the opportunity for counsel to object and the court to rule on those objections. Simply making an inappropriate or inadmissible comment during closing does not mean that the petitioner did not receive a fair trial. There has been no showing that the jury was unfairly prejudiced by any of the comments made by the prosecutor. When taken in context, the prosecutor's comments were not prosecutorial misconduct and did not deprive petitioner of a fair trial. The decision of the Washington State Court of Appeals was not contrary to clearly established law and did not unreasonable determine the facts. Accordingly, this ground for relief is without merit.

  E.  *Out of court identification by Cassidy Moen.*

Petitioner argues as a separate ground for relief that his constitutional rights were violated by the admission of Cassidy Moen's out-of-court identification of him as the person who entered Room 24 wearing a bandana with a gun in his hands. He argues that the identification was impermissibly suggestive because Ms. Moen was told his street name, "Chill" by the police prior to the identification (Dkt. # 1, page 5). The court has carefully read the record on this issue. Ms. Moen was asked about Chill after she mentioned the name to police (Dkt. # 11, Exhibit RP 19 page 275). When she stated that she knew he was a suspect in the shooting the detective asked her how she knew that information and she responded "from you guys."

Both detectives who were present during the photo montage testified that they did not tell M.s Moen about Chill prior to the photo montage being shown to her (Dkt. # 11, Exhibit RP 18

page 92 for Detective Graef, Exhibit 11, RP 19 page 280 for Detective Vold). Further, Ms. Moen testified that she did not specifically remember who told her the name "Chill." She also testified that they did not give her the name and picture or tell her which picture was Chill and that she had not connected the name "Chill" to the defendant at time (Dkt. # 11, Exhibit RP 20 pages 351 and 352).

The Washington State Court of Appeals considered this ground for relief and held:

> "An out-of-court photographic identification meets due process requirements it if is not so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *State v. Eacret*, 94 Wn. App. 282, 285, 971 P2d 109 (1999) (citing *Simmons v United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed. 2d 1247 (1968); *State v. Hilliard*, 89 Wn.2d 430, 438, 573 P,2d 22 (1977). Stroman must first show that the identification procedure was suggestive in that it directed "undue attention to a particular photo." *State v. Linares*, 98 Wn.App. 397, 403, 989 P.2d 591 (1999)(quoting *Eacret*, 94 Wn. App. at 283).
>
> Stroman has not made that showing. The trial court reasonably concluded that while the detectives improperly mentioned Stroman's street name before the photo identification, the name was not linked with the six-picture photomontage Moen later viewed. Moen developed her opinion of Stroman's appearance based on seeing him at the hotel, seeing him later on the street after the murder, and then viewing his picture in a photomontage.

(Dkt. # 11, Exhibit 2, page 19). While the trial court did not find that the detectives mentioned the name "Chill" to Moen, the law and remaining analyses are correct. Thus, the holding of the Washington State Court of Appeals was not clear error of law or an unreasonable determination of the facts in light of the evidence. This ground for relief is without merit.

F.  *Exclusion of Stroman's mother from the trial.*

Petitioner argues that his Sixth Amendment right to a public trial was violated when the trial court excluded his mother from the proceedings. When petitioner was questioned by detectives after having been advised of his Miranda rights, petitioner stated that on the night of

the murder he spent the evening with his father and the night with his mother (Dkt. # 11, Exhibit RP 18, page 105). It was the defense who moved to exclude witnesses (Dkt. # 11, Exhibit RP 18, page 77).

When Mrs. Stroman entered the court room, the prosecution moved to exclude her as a possible alibi witness. While the defense objected stating there was no alibi defense, the fact remained that the defendant may have chosen to take the stand and, if he did, the prosecution planned to examine him regarding his prior statements to police. Ms. Stroman's exclusion as a potential rebuttal witness was arguably justified. Under Fed. R. of Evid. 615, a trial court has the ability to exclude potential rebuttal witnesses and this exclusion does not deny a defendant his right to a public trial. Indeed, had the state called Ms. Stroman as a rebuttal witness after she had been in the courtroom, her testifying may have been grounds for reversal. See, United States v Ell, 718 F. 2d 291, 292 (9th Cir. 1983).

The Washington State Court of Appeals considered this ground for relief and held that the exclusion of a potential witness did not violate petitioner's right to a public trial, citing to State v. Sexsmith, 138 Wn. App. 497, 510 (2007). This decision does not violate clearly established law and is a reasonable determination of the facts in light of the evidence presented. This ground for relief is without merit.

## CERTIFICATE OF APPEALABILITY

A petitioner seeking post-conviction relief under 28 U.S.C.§ 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could

disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). Under this standard, this Court concludes that petitioner is not entitled to a certificate of appealability with respect to this petition.

## CONCLUSION

None of the grounds for relief that have been exhausted have merit. Further, one ground is procedurally defaulted and should not be considered on the merits. The petition should be denied.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on February, 12, 2010, as noted in the caption.

DATED this 20th day of January, 2010.

J. Richard Creatura
United States Magistrate Judge

REPORT AND
RECOMMENDATION - 16